1
Jennifer Lantz (SBN 202252)
jmlantz@duanemorris.com
2
**DUANE MORRIS LLP**
2475 Hanover Street
3
Palo Alto, CA 94304
Tel.: 650-847-4150
4
Facsimile: 650-847-4151

5
Meghan C. Killian (SBN 310195)
mckillian@duanemorris.com
6
**DUANE MORRIS LLP**
One Market Plaza
7
Spear Tower, Suite 2200
San Francisco, CA  94105
8
Tel.: 415-957-3138
Facsimile: 415-840-0017
9

10
Attorneys for Plaintiff
DROPP TV HOLDINGS, INC.
11

12
**UNITED STATES DISTRICT COURT,**

13
**NORTHERN DISTRICT OF CALIFORNIA**

14

15
DROPP TV HOLDINGS, INC., a Delaware
corporation,
16
                              Plaintiff,
17
        v.
18
EDMOND TRUONG, an individual, GM GN IRL
19
LIMITED, a British Virgin Islands corporation; and
DOES 1 THROUGH 10,
20
                              Defendants.
21

22

23

24

25

26

27

28

**Case No.**

**COMPLAINT FOR:**

**TRADEMARK INFRINGEMENT[15
U.S.C. § 1125(a)];**

**FEDERAL UNFAIR COMPETITION
AND FALSE DESIGNATION OF
ORIGIN (15 U.S.C. § 1125(a));**

**STATE UNFAIR COMPETITION [CAL.
BUS. & PROF. CODE § 17200]; AND**

**COMMON LAW UNFAIR
COMPETITION.**

**DEMAND FOR TRIAL BY JURY**

1
COMPLAINT

1   Plaintiff Dropp TV Holdings, Inc. (referred to as "Dropp" or "Plaintiff"), by its undersigned

2   attorneys, Duane Morris LLP, for its Complaint against Defendants Edmond Truong and GM GN

3   IRL Limited ("Defendants"), hereby alleges as follows:

4   **NATURE OF THE ACTION**

5   1.   This action seeks damages and injunctive relief for Defendants violation of Dropp's

6   trademark rights. This is an action for trademark infringement and unfair competition under Section

7   43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(a), and for substantial

8   and related claims of trademark infringement and unfair competition under the statutory and

9   common law of the state of California.

10   2.   Since at least as early as 2019, Dropp has used the DROPP, DROPPTV, DROPP

11   LABS, DROPPLABS and DROPP EVERYTHING SHOP EVERYWHERE marks (the "DROPP

12   Marks") as brand identifiers for its cutting-edge software, advertising, and retail services.  Dropp

13   has extensively promoted and leveraged its technology for mixed reality and augmented reality

14   uses, and provides geo-tagging mixed reality pop-up shop experiences as well as other augmented

15   reality usage extensions and capabilities.

16   3.   With a blatant disregard for Dropp's rights in the DROPP Marks, Defendants have

17   been using, without Dropp's authorization, the DROPP, DROPP GG and DROPP LAND marks (the

18   "Infringing Marks") in connection with geographical-based non-fungible token ("NFT") minting,

19   mixed reality events, and a metaverse platform. Dropp has repeatedly notified Defendants of its

20   prior rights in the DROPP Marks and has cautioned Defendants against the use of the Infringing

21   Marks.

22   4.   Dropp has been actively expanding its business into digital goods, including NFTs

23   and other blockchain-based technology, including digital wallets, which includes the commercial

24   arenas where Defendants have been using the Infringing Marks.

25   5.   Defendants' conduct constitutes federal trademark infringement and federal unfair

26   competition as well as trademark infringement and unfair competition under the law of the State of

27   California, and is a flagrant violation of Dropp's trademark rights. Dropp seeks an injunction, an

28

accounting of Defendants' profits flowing from their use of the Infringing Marks, damages, attorneys' fees, and such other relief as the Court deems just and proper.

## THE PARTIES

6.      Plaintiff Dropp TV Holdings Inc. is a corporation organized and existing under the laws of Delaware with a registered address at 307 West 36th Street, 13F New York, New York.

7.      Upon information and belief, and after a diligent and reasonable search, GM GN IRL Limited doing business as Dropp GG (hereinafter referred to as "Dropp GG") is a corporation organized and existing under the laws of the Virgin Islands, British with an address of 2nd Floor, Ellen L. Skeleton Building, Fishers Lane, Road Town, Tortola, British Virgin Islands.

8.      Upon information and belief, and after a diligent and reasonable search, Defendant Edmond Truong is an individual residing in California with a known address of 1413 Allegado Alley San Jose, California 95128-4547. Upon Information and belief, Mr. Truong is the founder of Dropp GG, and controls and/or directs, in whole or in part, the activities and operations of Dropp GG, including the infringing activities, tortious acts and acts of unfair competition complained of herein. Upon Information and belief, Mr. Truong also goes by the alias Mr.Moonman.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1338(a) and 1338(b). The Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a).

10.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) over Plaintiff's claims arising under the laws of the State of California.

11.     This Court has personal jurisdiction over Defendant Dropp GG because it has purposefully availed itself of the benefits of doing business in the State of California and has significant contacts with the State of California. Upon information and belief, Dropp GG owns and operates the website www.dropp.gg. Dropp GG uses that website to market its infringing goods and services to customers and potential customers in California and elsewhere.

12.     On information and belief, while Dropp GG is nominally organized under the laws of the British Virgin Islands, it is operated by Mr. Truong from California and has no physical presence or operations in the British Virgin Islands.

13.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Mr. Truong resides in this district.

**FACTUAL BACKGROUND COMMON TO ALL CAUSES OF ACTION**

**A.      DROPP and the DROPP Marks**

14.     For years, Dropp has dedicated itself to becoming the industry-leading operating system for "shopatainment," that brings together video streaming, augmented reality, geo-location mixed reality and experiential commerce.

15.     Dropp uses proprietary technology to connect consumers, creators and brands through an interoperable ecosystem allowing for streamlined experiential commerce between the physical and digital worlds. Dropp's innovative shoppable streaming platform allows artists and creators to monetize their videos through direct commercial sales incorporated in the streaming of diverse content. For example, Dropp's platform allows consumers to buy merchandise featured in music videos, such as the A$AP TyY video shown below.



COMPLAINT

16.     Dropp also offers an all-encompassing technology consulting, marketing, and full-service development agency with a Web3 focus in connection with the DROPP LABS mark. From initial concept ideation, to front-end and back-end programming, to continuing community development and support, Dropp provides services relating to all aspects of an organization's journey into Web3.

17.     Dropp also offers and is preparing to offer unique comprehensive experiential NFT and social token capabilities, empowering its partners and consumers to generate value in Web3. For example, in March of 2022, Dropp announced its partnership with the owner of Ape #7792, an NFT from the Bored Ape Yacht Club. Starting in January 2022, Dropp brought the 2D ape to life by leveraging its proprietary mixed reality engine.

  

The Ape #7792 will host future Dropp events, featuring some of the hottest luxury and streetwear fashion items, including providing NFT custody wallet and purchasing capabilities in crypto and fiat currencies.

18.     Dropp also owns United States Trademark Applications for the DROPP Marks, as shown below:

| Mark | Serial No. | Filing Date | Goods And Services |
|---|---|---|---|
| DROPP | 88857295 | April 2, 2020 | IC 35 Advertising and marketing services, namely, promoting the goods and services of third parties through an on-line medium; advertising and marketing services that enable businesses to use image recognition for tagging products and linking the products to a corresponding website to provide further |

| Mark | Serial No. | Filing Date | Goods And Services |
|------|-----------|-------------|--------------------|
| | | | information and purchase options to consumers; advertising, promotion, and marketing services in the nature of providing a link between products and services displayed in visual content to purchasing options for those goods and services; producing enhanced interactive video advertising content for others, namely, producing interactive video experiences for others through which goods and services may be directly purchased.<br><br>IC 42. Software as a service (SAAS) services featuring software for use in image recognition to tag products displayed in video content to enable direct purchases of the tagged products from the video content; providing an on-line, non-downloadable software platform for third parties to tag images in video content to facilitate the purchase of the displayed products and services by viewers of the visual content; software as a service (SaaS) featuring computer software platforms that enable consumers to identify and locate pricing and availability of goods and services depicted on online video content and made available for purchase through retailers; providing temporary use of non-downloadable computer software for enabling users to view interactive video content and shop the products and services of others shown therein; computer services, namely, providing a platform as a service (PAAS) featuring computer software platforms for allowing users and advertisers to personalize and target online shopping experiences; providing a platform as a service (PAAS) featuring computer software platforms for analyzing and monetizing video content. |
| DROPP | 97264257 | February 11, 2022 | IC 9.  Downloadable digital media authenticated by non-fungible tokens; downloadable software for use in connection with providing a digital platform for navigating crypto-collectibles and |

| Mark | Serial No. | Filing Date | Goods And Services |
|------|-----------|-------------|--------------------|
| | | | blockchain-based non-fungible asset marketplaces and auctions; downloadable software for use in providing information for crypto-collectibles and blockchain-based non-fungible assets<br><br>IC 35. Providing an online marketplace for buyers and sellers of crypto-collectibles and blockchain-based non-fungible assets; operating an online marketplace for buyers and sellers of crypto-collectibles and blockchain-based non-fungible assets; business data analysis in the field of crypto-collectibles and blockchain-based non-fungible assets; advertising and marketing services, namely, promoting the goods and services of third parties through an online augmented reality medium; advertising and marketing services, namely, promoting the goods and services of third parties through a virtual reality medium; advertising and marketing services, namely, promoting the goods and services of third parties through a mixed reality medium; advertising and marketing services, namely, promoting the goods and services of third parties in the medium of the metaverse; advertising and marketing services that enable businesses to use image recognition for tagging products and linking the products in a virtual or augmented reality medium to a corresponding website to provide further information and purchase options to consumers; advertising and marketing services that enable businesses to use image recognition for tagging products and linking the products in a mixed reality medium or in the metaverse to a corresponding website to provide further information and purchase options to consumers; advertising, promotion, and marketing services in the nature of providing a link between products and services displayed in augmented reality or virtual reality content to purchasing options for those goods and services; advertising, promotion, and marketing services in the nature of |

| Mark | Serial No. | Filing Date | Goods And Services |
|---|---|---|---|
| | | | providing a link between products and services displayed in mixed reality or in metaverse content to purchasing options for those goods and services<br><br>IC 42. Software as a service (SAAS) services and platform as a service (PAAS) featuring software for use in connection with providing a digital platform for navigating crypto-collectible and blockchain-based non-fungible asset marketplaces and auctions; software as a service (SAAS) services and platform as a service (PAAS) featuring software for use in connection with providing information for crypto-collectibles and blockchain-based non-fungible assets; creation of online retail stores for others in the nature of web-based service that allows users to create hosted crypto-collectible and blockchain-based non-fungible asset stores; providing technological consulting in the field of crypto-collectibles and blockchain-based non-fungible assets; software as a service (SAAS) services featuring software for use in image recognition to tag products displayed in virtual reality or augmented reality to enable direct purchases of the tagged products from the virtual reality or augmented reality content; software as a service (SAAS) services featuring software for use in image recognition to tag products displayed in mixed reality or in the metaverse to enable direct purchases of the tagged products from the mixed reality or metaverse content; providing an on-line, non-downloadable software platform for third parties to tag images in augmented reality or virtual reality to facilitate the purchase of the displayed products and services by viewers; providing an on-line, non-downloadable software platform for third parties to tag images in mixed reality or in the metaverse to facilitate the purchase of the displayed products and services by viewers; software as a service (SaaS) featuring computer software platforms that enable consumers to identify and locate |

COMPLAINT

| Mark | Serial No. | Filing Date | Goods And Services |
|------|-----------|-------------|--------------------|
| | | | pricing and availability of goods and services depicted in augmented reality or virtual reality and made available for purchase through retailers; software as a service (SaaS) featuring computer software platforms that enable consumers to identify and locate pricing and availability of goods and services depicted in mixed reality or in the metaverse and made available for purchase through retailers; providing temporary use of non-downloadable computer software for enabling users to view interactive augmented reality or virtual reality content and shop the products and services of others shown therein; providing temporary use of non-downloadable computer software for enabling users to view interactive mixed reality or metaverse content and shop the products and services of others shown therein; computer services, namely, providing a platform as a service (PAAS) featuring computer software platforms for allowing users and advertisers to personalize and target augmented reality or virtual reality shopping experiences; computer services, namely, providing a platform as a service (PAAS) featuring computer software platforms for allowing users and advertisers to personalize and target mixed reality or metaverse shopping experiences; providing a platform as a service (PAAS) featuring computer software platforms for analyzing and monetizing augmented reality or virtual reality content; providing a platform as a service (PAAS) featuring computer software platforms for analyzing and monetizing mixed reality or metaverse content |
| DROPP LABS | 97264264 | February 11, 2022 | IC 9. Downloadable digital media authenticated by non-fungible tokens; downloadable software for use in connection with providing a digital platform for navigating crypto-collectible and blockchain-based non-fungible asset marketplaces and auctions; downloadable software for use in |

| Mark | Serial No. | Filing Date | Goods And Services |
|------|-----------|-------------|---------------------|
| | | | providing information for crypto-collectibles and blockchain-based non-fungible assets<br><br>IC 35. Providing an online marketplace for buyers and sellers of crypto-collectibles and blockchain-based non-fungible assets; operating an online marketplace for buyers and sellers of crypto-collectibles and blockchain-based non-fungible assets; business data analysis in the field of crypto-collectibles and blockchain-based non-fungible assets<br><br>IC 42. Software as a service (SAAS) services and platform as a service (PAAS) featuring software for use in connection with providing a digital platform for navigating crypto-collectible and blockchain-based non-fungible asset marketplaces and auctions; software as a service (SAAS) services and platform as a service (PAAS) featuring software for use in connection with providing information for crypto-collectibles and blockchain-based non-fungible assets; creation of online retail stores for others in the nature of web-based service that allows users to create hosted crypto-collectible and blockchain-based non-fungible asset stores; providing technological consulting in the field of crypto-collectibles and blockchain-based non-fungible assets |
| DROPPTV | 97264251 | February 11, 2022 | IC 9. Downloadable digital media authenticated by non-fungible tokens; Downloadable software for use in connection with providing a digital platform for navigating crypto-collectibles and blockchain-based non-fungible asset marketplaces and auctions; downloadable software for use in providing information for crypto-collectibles and blockchain-based non-fungible assets<br><br>IC 35. Providing an online marketplace for buyers and sellers of crypto-collectibles and blockchain-based non-fungible assets; operating an online marketplace for buyers |

| Mark | Serial No. | Filing Date | Goods And Services |
|---|---|---|---|
| | | | and sellers of crypto-collectibles and blockchain-based non-fungible assets; business data analysis in the field of crypto-collectibles and blockchain-based non-fungible assets; advertising and marketing services, namely, promoting the goods and services of third parties through an online augmented reality medium; advertising and marketing services, namely, promoting the goods and services of third parties through a virtual reality medium; advertising and marketing services, namely, promoting the goods and services of third parties through a mixed reality medium; advertising and marketing services, namely, promoting the goods and services of third parties in the medium of the metaverse; advertising and marketing services that enable businesses to use image recognition for tagging products and linking the products in a virtual or augmented reality medium to a corresponding website to provide further information and purchase options to consumers; advertising and marketing services that enable businesses to use image recognition for tagging products and linking the products in a mixed reality medium or in the metaverse to a corresponding website to provide further information and purchase options to consumers; advertising, promotion, and marketing services in the nature of providing a link between products and services displayed in augmented reality or virtual reality content to purchasing options for those goods and services; advertising, promotion, and marketing services in the nature of providing a link between products and services displayed in mixed reality or in metaverse content to purchasing options for those goods and services<br><br>IC 42. Software as a service (SAAS) services and platform as a service (PAAS) featuring software for use in connection with providing a digital platform for navigating crypto-collectible and blockchain-based non-fungible |

| Mark | Serial No. | Filing Date | Goods And Services |
|------|-----------|-------------|--------------------|
| | | | asset marketplaces and auctions; software as a service (SAAS) services and platform as a service (PAAS) featuring software for use in connection with providing information for crypto-collectibles and blockchain-based non-fungible assets; creation of online retail stores for others in the nature of web-based service that allows users to create hosted crypto-collectible and blockchain-based non-fungible asset stores; providing technological consulting in the field of crypto-collectibles and blockchain-based non-fungible assets; software as a service (SAAS) services featuring software for use in image recognition to tag products displayed in virtual reality or augmented reality to enable direct purchases of the tagged products from the virtual reality or augmented reality content; software as a service (SAAS) services featuring software for use in image recognition to tag products displayed in mixed reality or in the metaverse to enable direct purchases of the tagged products from the mixed reality or metaverse content; providing an on-line, non-downloadable software platform for third parties to tag images in augmented reality or virtual reality to facilitate the purchase of the displayed products and services by viewers; providing an on-line, non-downloadable software platform for third parties to tag images in mixed reality or in the metaverse to facilitate the purchase of the displayed products and services by viewers; software as a service (SaaS) featuring computer software platforms that enable consumers to identify and locate pricing and availability of goods and services depicted in augmented reality or virtual reality and made available for purchase through retailers; software as a service (SaaS) featuring computer software platforms that enable consumers to identify and locate pricing and availability of goods and services depicted in mixed reality or in the metaverse and made available for purchase through retailers; providing temporary use of non- |

| Mark | Serial No. | Filing Date | Goods And Services |
|------|-----------|-------------|---------------------|
| | | | downloadable computer software for enabling users to view interactive augmented reality or virtual reality content and shop the products and services of others shown therein; providing temporary use of non-downloadable computer software for enabling users to view interactive mixed reality or metaverse content and shop the products and services of others shown therein; computer services, namely, providing a platform as a service (PAAS) featuring computer software platforms for allowing users and advertisers to personalize and target augmented reality or virtual reality shopping experiences; computer services, namely, providing a platform as a service (PAAS) featuring computer software platforms for allowing users and advertisers to personalize and target mixed reality or metaverse shopping experiences; providing a platform as a service (PAAS) featuring computer software platforms for analyzing and monetizing augmented reality or virtual reality content; providing a platform as a service (PAAS) featuring computer software platforms for analyzing and monetizing mixed reality or metaverse content |
| DROPP EVERYTHING SHOP EVERYWHERE | 88857298 | April 2, 2020 | IC 35. Advertising and marketing services, namely, promoting the goods and services of third parties through an on-line medium; advertising and marketing services that enable businesses to use image recognition for tagging products and linking the products to a corresponding website to provide further information and purchase options to consumers; advertising, promotion, and marketing services in the nature of providing a link between products and services displayed in visual content to purchasing options for those goods and services; producing enhanced interactive video advertising content for others, namely, producing interactive video experiences for others through which goods and services may be directly purchased; on-line retail store |

| Mark | Serial No. | Filing Date | Goods And Services |
|------|-----------|-------------|--------------------|
| | | | services featuring downloadable software and software recorded on media that enables users to view interactive video and shop the products and services of others shown therein<br><br>IC 42. Software as a service (SAAS) services featuring software for use in image recognition to tag products displayed in video content to enable direct purchases of the tagged products from the video content; providing an on-line, non-downloadable software platform for third parties to tag images in video content to facilitate the purchase of the displayed products and services by viewers of the visual content; software as a service (SaaS) featuring computer software platforms that enable consumers to identify and locate pricing and availability of goods and services depicted on online video content and made available for purchase through retailers; providing temporary use of non-downloadable computer software for enabling users to view interactive video content and shop the products and services of others shown therein; computer services, namely, providing a platform as a service (PAAS) featuring computer software platforms for allowing users and advertisers to personalize and target online shopping experiences; providing a platform as a service (PAAS) featuring computer software platforms for analyzing and monetizing video content. |

19.     Dropp's goods and services are currently available and provided to users and consumers under and/or in connection with the DROPP Marks throughout the United States.

20.     Dropp has invested significant amounts of time and effort and financial resources to the advertisement and promotion of the DROPP Marks in a wide variety of media, including in social media, billboards, and the internet. Dropp's advertising and promotion of the DROPP Marks has created an association in the minds of the consuming public between the DROPP Marks and the Dropp goods and services.

21.    In 2019, Dropp used a prominent Times Square billboard to promote its up and coming artists and promote its exclusive content releases. Dropp further utilized augmented reality ("AR") technology to transform the billboard into a shoppable storefront where consumers could enter a fully interactive retail experience.



22.    In July 2019, Dropp demonstrated its AR and mixed reality capabilities at the Liberty Fairs Fashion Show in New York City.  *See* https://vimeo.com/373989451 (Last Accessed April 25, 2022).

23.    In 2019, Dropp presented its AR technology at the ISPO trade show in Munich, Germany.  *See* https://vimeo.com/dropp/ispo2019 (Last Accessed April 25, 2022).

24.    In 2019, Dropp also partnered with Warner Brothers for an interactive AR and geo-tagged mixed reality experience entitled "The Polar Express In Concert," which was presented in British Columbia, Canada. *See* https://vimeo.com/702649473 (Last Accessed April 25, 2022).

25.      In 2021, Dropp partnered with Agenda Show to provide an AR-enabled mixed-reality geo-tagged event in Las Vegas, Nevada. *See* https://finance.yahoo.com/news/agenda-show-partners-droppptv-expanded-132900679.html and https://vimeo.com/589666796/6682b1243b (Last Accessed April 25, 2022).

26.      In October 2021, Dropp was featured as an official technology partner at The Future Investment Initiative (FII) in Riyadh, Saudi Arabia speaking on and featuring its shopatainment and AR mixed-reality technologies.

27.      Following on FII, in November 2021, Dropp again demonstrated its AR mixed-reality technology in Times Square in connection with its Nasdaq announcement of its Series B financing round.



*See* https://www.yahoo.com/now/droppptv-executives-highlight-shopatainment-keynote-235800001.html (Last Accessed April 25, 2022).

28.      Dropp enjoys public recognition through its partnerships with a long list of artists, athletes, and influencers who create content for the Dropp platform, including but not limited to Ashanti, A$AP Mob's A$AP TyY, and professional basketball player Iman Shumpert.

29.      A number of diverse global brands including LG, Vero Moda, COOGI, Zanerobe, Agenda Show and Roland have also joined the Dropp platform.

30.     Moreover, Dropp and its services have been the subject matter of numerous articles in publications such as *RollingStone, Forbes,* and *Women's Wear Daily.*

31.     Dropp's efforts to advertise and promote the DROPP Marks includes a robust social media presence on Instagram (@droppTV) with 25.6k followers, Telegram and Discord as well as its websites located at https://www.dropp.tv/, https://aboutdropp.com/ and https://dropplabs.io/. In January 2022, Dropp funded and filmed a Valentine's Day Instagram influencer campaign in connection with the DROPP Marks with influencer JCook (with 288k followers).

32.     In January through March 2022, Dropp launched its Dollar Dropp Raffle(s) in connection with the DROPP Marks and the related hashtag $dropp. Dropp GG subsequently used the same hashtag in its own web and Discord postings and within its most recent press releases, further increasing confusion between Defendants and Dropp.

33.     Since 2018, Dropp also has extended its years of research, including patent pending technology, to include a partnership with UC Berkeley Launchpad for the further development of Dropp's artificial intelligence and machine learning driven video object recognition in conjunction with matching and recommendation mesh algorithms and capabilities.

34.     In January 2022, Dropp received its corporate custody wallet with Gemini Trust Company, LLC for the buying and selling of NFTs. With Gemini and other wallet providers, Dropp embeds its product and technology stack with these third parties to ensure integration across platforms and marketplaces to scale user interoperability. Dropp's approach is unique and novel to ensure ease of use to normalize digital and physical commerce processes and activities.

35.     Dropp has developed, at great effort and expense, valuable goodwill in the DROPP Marks and consumers have come to recognize the DROPP Marks as being uniquely associated with the DROPP goods and services and Dropp. Thus, the DROPP Marks have become of one Dropp's most valuable assets, and symbols of its goodwill.

**B.      Defendants' Infringing Activities**

36.     Upon information and belief, despite having actual and prior knowledge of Dropp's exclusive rights in the DROPP Marks, Defendants have infringed and continue to infringe the DROPP Marks through the unauthorized use of the Infringing Marks in connection with

Defendants' geographical-based NFT releases, geographical-based NFT minting services, offering mixed reality events, and providing a metaverse platform that maps to the physical world (collectively referred to herein as "Defendants' Goods and Services"), all of which either overlap with Dropp's products and services or are within the zone of natural expansion for Dropp's products and services.

37.     Upon information and belief, in 2021, Defendant Mr. Truong founded Defendant Dropp GG in the San Francisco Bay Area.

38.     Upon information and belief, in January of 2022, Defendants launched a website at www.dropp.gg ("Dropp GG Website"). Through both the Dropp GG Website and various press releases, Defendants announced their intent to launch Defendants' Goods and Services throughout 2022.



*See* https://www.dropp.gg/ (Last Accessed April 22, 2022).

39.     Similarly, in January of 2022, Defendants announced through a press release that they had secured $8 million in investment funding to develop a "framework for mixed reality events that blend real-world activities with its proprietary metaverse environment":



*See* https://www.globenewswire.com/news-release/2022/01/26/2373481/0/en/Dropp-GG-raises-8M-to-merge-the-metaverse-with-the-physical-world.html (Last accessed April 22, 2022).

40.     Upon information and belief, on January 26, 2022, Defendants released their first NFT collaboration between the musician Hiroshi Fujiwara and skateboarder Mark Gonzales, which included 10,000 unique NFT art pieces. The Dropp GG Website claims that this launch "SOLD OUT":



*See* https://www.dropp.gg/ (Last Accessed April 22, 2022).

41.    Accordingly, Dropp, through its counsel, sent correspondence to Defendant Dropp GG on February 1, 2022 and Defendant Mr. Truong on February 11, 2022, advising them of Dropp's prior and senior rights in the DROPP Marks and demanding they cease use of the Infringing Marks in connection with Defendants' Goods and Services.

42.    On February 15, 2022, Defendant Dropp GG, through its counsel, responded to Dropp's February 1, 2022 letter. Defendant Mr. Truong did not respond to Dropp's correspondence.

43.    Dropp sent a further response back Dropp GG's counsel on February 24, 2022 again demanding Dropp GG cease use of the Infringing Marks. Dropp received no reply.

44.    On March 29, 2022, Dropp's counsel sent follow-up correspondence asking for confirmation of the receipt of its letter dated February 24, 2022 and that Dropp GG would cease use of the Infringing Marks. Dropp again received no reply.

45.    Upon information and belief, around March 17, 2022, after Dropp had demanded that Defendants cease using the Infringing Marks, Defendants launched "DROPP LAND (Los Angeles)," where consumers could purchase virtual geographically-based land plots specifically related to Los Angeles, California as NFT tokens. This event allowed consumers to mint Los Angeles-based NFT tokens.



COMPLAINT

*See* https://droppgg.medium.com/dropp-land-los-angeles-public-sale-announcement-12d873c9266d (Last Accessed April 22, 2022).

46.     Defendants also continue to promote and advertise their geographical-based NFT minting services and mixed reality events and venues in partnership with unnamed artists and celebrities:



*See* https://www.dropp.gg/ (Last Accessed April 22, 2022).



*See* https://www.dropp.gg/ (Last Accessed April 22, 2022).

47.     Defendants sell and offer for sale Defendants' Goods and Services to the same classes of consumers as Dropp.

48.     Defendants' Goods and Services and the Dropp's goods and services are competing, closely related and/or within Dropp's zone of natural expansion. For example, upon information and belief, Dropp GG intends to host an online 3D environment or metaverse for entertainment purposes, which is highly related to Dropp's online "shopatainment" services, and also similar to the 3D metaverse demonstrations that Dropp has published, such as a livestreaming program hosted by a 3D version of a Bored Ape Yacht Club NFT.

49.     Defendants furthermore are commencing operations right in the center of the space that Dropp has actively been planning and preparing to enter, at a crucial time in Dropp's business growth and development. Defendants claim that they provide a "framework for mixed reality events that blend real-world activities with its proprietary metaverse environment," which is the same as or similar to the mixed reality events and services that Dropp provides or is preparing to provide.

50.     For example, upon information and belief, Defendants have released a beta version of a "DROPP Gallery," which is a module available in connection with DROPP LAND that allows users to display NFTs, sell and buy NFTs, and to become brokers or curators of digital designs and artworks in their own galleries.  Dropp has also been preparing to provide the same services.

51.     Defendants' DROPP mark is identical to Dropp's DROPP mark. Furthermore, Defendants' other Infringing Marks are largely identical to Dropp's DROPP Marks, utilizing the "DROPP" name and merely appending the suffix "-GG" or "LAND".

52.     Upon information and belief, Defendants intentionally selected the Infringing Marks to be confusingly similar to Dropp's DROPP Marks.

53.     By virtue of prior use of the DROPP Marks in the United States, Dropp's rights in the DROPP Marks precede Defendants' use of the Infringing Marks or any date upon which Defendants can rely on for purposes of priority.  Dropp has superior rights to Defendants in the DROPP Marks.

54.    Defendants' infringement is negatively impacting Dropp's business and causing actual confusion in the industry. On one occasion, Dropp was congratulated on its recent investment announcement when, in fact, the investment was announced for Dropp GG not Dropp.

55.    Additionally, there is confusion shown between Dropp and Dropp GG on the platform Crunchbase, which is used find business information about private and public companies. Specifically, when reviewing the "Signals and News" about Dropp, articles about both Dropp and Dropp GG are displayed, as shown below:



See https://www.crunchbase.com/organization/dropptv/signals_and_news (Last Accessed April 22, 2022).

56.    Defendants' unauthorized use of the Infringing Marks are likely to mislead consumers into believing that Defendants' Goods and Services are sponsored, licensed or approved by, or are otherwise associated or affiliated with, Dropp and its DROPP Marks.

57.    Upon information and belief, Defendants adopted and commenced use of, uses and plans to continue to use, the Infringing Marks with the intent and purpose of trading upon the extensive goodwill built up by Dropp in its DROPP Marks and to reap the benefits of the years of

effort invested by Dropp to create public recognition of the DROPP Marks and Dropp's goods and services sold thereunder.

58.     Defendant has engaged and continues to engage in deliberate and willful infringement designed to confuse consumers as to the source of Defendants' Goods and Services under the Infringing Marks and trade upon Dropp's valuable intellectual property, goodwill and reputation.

59.     Defendant's conduct constitutes trademark infringement, unfair competition and false designation of origin, in violation of federal, state and common law.  Under the applicable federal and state statutes, Dropp would be entitled to not only immediate and permanent injunctive relief against Defendants' continued infringement, but also to recovery of profits, treble and punitive damages.

**FIRST CAUSE OF ACTION**

**(Federal Trademark Infringement, 15 U.S.C. § 1125(a))**

60.     Dropp repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

61.     Dropp is the valid owner of the DROPP Marks, which are entitled to full recognition and protection under federal trademark law.

62.     The DROPP Marks are used in commerce, have been used continuously in commerce since at least as early as 2019, and are distinctive by virtue of their inherent and acquired distinctiveness, extensive use, prominence in intended and unsolicited media, and publicity throughout the United States.

63.     As described in detail in the paragraphs set forth above, Defendants are advertising, promoting, and selling Defendants' Goods and Services under and/or in connection with the Infringing Marks in the United States.

64.     Upon information and belief, consumers who encounter Defendants' Goods and Services are likely to believe that those services are sourced from, affiliated with, or associated with Dropp. Thus, Defendants' use of the Infringing Marks under and/or in connection with Defendants' Goods and Services, is likely to cause confusion, mistake, or deception as to the affiliation,

connection, or association of Defendants with Dropp, or as to the origin, sponsorship, or approval of Defendants' Goods and Services by Dropp. Such use constitutes trademark infringement in violation of 15 U.S.C. § 1125(a).

65.     Defendants' actions are without the authorization or permission of Dropp. Upon information and belief, Defendants chose to provide, sell, advertise, and promote Defendants' Goods and Services in connection with the Infringing Marks with actual knowledge of Dropp's prior use of and rights in the DROPP Marks. Upon information and belief, Defendants chose to provide, sell, advertise, and promote Defendants' Goods and Services under and/or in connection with the Infringing Marks in commerce with the intent to cause confusion, to cause mistake, or to deceive.

66.     Upon information and belief, Defendants have profited from this infringement.

67.     This is an exceptional case under 15 U.S.C. § 1117(a).

68.     Defendants' willful conduct has caused damage to Dropp in an amount to be determined at trial, and unless restrained, will continue to cause serious and irreparable injury for which there is no adequate remedy at law.

69.     In light of the foregoing, Dropp is entitled to injunctive relief, and to recover from Defendants all damages, including lost profits and attorneys' fees, that Dropp has sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant enhancement pursuant to 15 U.S.C. § 1117(a), as well as the costs of this action. Dropp is also entitled to an accounting of Defendants' profits resulting from its Lanham Act violations.

## SECOND CAUSE OF ACTION

### (Federal Unfair Competition and False Designation of Origin,
### 15 U.S.C. § 1125(a))

70.     Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

71.     Defendants' unauthorized use of the Infringing Marks in connection with Defendants' Goods and Services constitutes a false designation of origin and a false representation as to the origin of Defendants' Goods and Services, is likely to cause confusion, mistake, or deception as to the source of Defendants' Goods and Services, and is likely to create the false impression that

Defendants' Goods and Services are authorized, sponsored, endorsed, licensed by, or affiliated with Dropp.

72.      Upon information and belief, Defendants' chose to provide, sell, advertise and promote Defendants' Goods and Services under and/or in connection with the Infringing Marks with actual knowledge of Dropp's prior use of and rights in the DROPP Marks. Upon information and belief, Defendants offered Defendants' Goods and Services for sale under and/or in connection with the Infringing Marks, in commerce, with the intent to cause confusion, to cause mistake, or to deceive.

73.      Defendants' actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.      Defendant's conduct has caused and is causing immediate and irreparable injury to Dropp, and will continue both to damage Dropp and to confuse the public unless enjoined by this Court. Dropp has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (State Unfair Competition, Cal. Bus. & Prof. Code § 17200)

75.      Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

76.      Defendants' conduct complained of herein is likely to confuse the public as to the origin, source or sponsorship of Defendants' Goods and Services, or to cause mistake or to deceive the public into believing that Defendants' Goods and Services are authorized, sponsored, endorsed, licensed by, or affiliated with Dropp, in violation of Dropp's rights in the DROPP Marks under Cal. Bus. & Prof. Code § 17200.

77.      Upon information and belief, Defendants chose to provide, sell, advertise and promote Defendants' Goods and Services under and/or in connection with the Infringing Marks with constructive and/or actual knowledge of Dropp's prior use of and rights in the DROPP Marks.  The unlawful, unfair, and/or fraudulent business acts and/or practices set forth herein have been undertaken by Defendants willfully with the intention of causing harm to Dropp and for the

calculated purpose of misappropriating Dropp's goodwill and business reputation.  By adopting and using the Infringing Marks, Defendant has been unjustly enriched and Dropp has been damaged.

78.    By misappropriating and trading upon the goodwill and business reputation represented by the DROPP Marks, Defendants have been and, unless enjoined by this Court, will continue to be unjustly enriched at Dropp's expense.

79.    As a direct and proximate result of Defendants' wrongful conduct, Defendants have profited, and will continue to profit, from the strength of the DROPP Marks.

80.    As a direct and proximate result of Defendants' wrongful conduct, Dropp has been injured in fact and has lost money and profits, and such harm will continue unless Defendants' acts are enjoined by the Court.

81.    Defendants' sale, advertisement and promotion of Defendants' Goods and Services under and/or in connection with the Infringing Marks, constitutes unfair competition under Cal. Bus. & Prof. Code § 17200.

82.    Defendants' conduct constitutes unfair competition with Dropp, all of which has caused and will continue to cause irreparable injury to Dropp's goodwill and reputation unless enjoined by this Court.  Dropp has no adequate remedy at law.

83.    In light of the foregoing, Dropp is entitled to an injunction under Cal. Bus. & Prof. Code §§ 17200 et seq. restraining Defendants from engaging in further such unlawful conduct, as well as restitution of those amounts unlawfully obtained by Defendants through its wrongful conduct.

## FOURTH CAUSE OF ACTION

### (Common Law Unfair Competition)

84.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

85.    Defendants' conduct complained of herein is likely to confuse the public as to the origin, source or sponsorship of Defendants' Goods and Services, or to cause mistake or to deceive the public into believing that Defendants' Goods and Services are authorized, sponsored, endorsed, licensed by, or affiliated with Dropp, in violation of Dropp's rights in the DROPP Marks under California common law.

86.     Upon information and belief, Defendants chose to provide, sell, advertise and promote Defendants' Goods and Services under and/or in connection with the Infringing Marks with constructive and/or actual knowledge of Dropp's prior use of and rights in the DROPP Marks.  The unlawful, unfair, and/or fraudulent business acts and/or practices set forth herein have been undertaken by Defendants willfully with the intention of causing harm to Dropp and for the calculated purpose of misappropriating Dropp's goodwill and business reputation.  By adopting and using the DROPP Marks, Defendants have been unjustly enriched and Dropp has been damaged.

87.     By misappropriating and trading upon the goodwill and business reputation represented by the DROPP Marks, Defendants have been and, unless enjoined by this Court, will continue to be unjustly enriched at Dropp's expense.

88.     Defendants' sale, advertisement and promotion of Defendants' Goods and Services under and/or in connection with the Infringing Marks, constitutes unfair competition under California common law.

89.     Defendants' conduct constitutes unfair competition with Dropp, all of which has caused and will continue to cause irreparable injury to Dropp's goodwill and reputation unless enjoined by this Court. Dropp has no adequate remedy at law.

90.     In light of the foregoing, Dropp is entitled to injunctive relief, and to recover from Defendants all damages, including lost profits and attorneys' fees, that Dropp has sustained and will sustain as a result thereof, in an amount not yet known, as well as the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment as follows:

1.     For an order and judgment that Defendants have infringed Dropp's DROPP Marks in violation of Dropp's rights under 15 U.S.C. § 1125(a), common law, and/or California law.

2.     For an order and judgment that Defendants have acted in bad faith, willfully, intentionally, and/or with reckless disregard to Dropp's rights;

3.     For an order permanently enjoining and restraining Defendants, its officers, agents, directors, shareholders, principals, licensees, distributors, attorneys, servants, employees, affiliates, subsidiaries and assigns, and all those persons in concert or participation with any of them from:

a.   Using the Infringing Marks or any other trademark that is confusingly similar to the DROPP Marks with the sale or advertisement of Defendants' Goods and Services;

b.   Conducting any activities in the United States that relate to, refer to or concern the advertising, promotion, distribution, displaying, sale or offering for sale of Defendants' Goods and Services or any related goods and services, in any media or format, using the Infringing Marks, or any other trademark that is confusingly similar the DROPP Marks;

c.   Using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that any goods advertised, promoted, distributed, displayed, produced, sold or offered for sale by Defendants, or any services advertised, promoted, sold or offered for sale by Defendants, are in any manner associated or connected with Plaintiff, or are authorized, licensed, sponsored or otherwise approved by Plaintiff;

d.   Engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of the DROPP Marks;

e.   Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above;

4.   For an order directing Defendants to deliver up to Plaintiff's attorneys an accounting of all profits earned on Defendants' Goods and Services;

5.   For an order directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any product or services advertised, promoted, distributed, displayed, produced, sold or offered for sale by Defendants is in any manner authorized by Plaintiff or related in any way to Plaintiff;

6.      For an order directing Defendant to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above;

7.      For an order awarding Plaintiff such damages it has sustained or will sustain by reason of Defendants' acts of trademark infringement and unfair competition pursuant to 15 U.S.C. § 1117;

8.      For an order awarding Plaintiff all gains, profits, property and advantages derived by Defendants from Defendants' unlawful conduct and that such profits be enhanced pursuant to 17 U.S.C. § 1117;

9.      For an order awarding Plaintiff exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate;

10.     For an order awarding Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

11.     For an order awarding Plaintiff restitution for Defendants' unfair business practices pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

12.     For an order awarding Plaintiff interest, including pre- and post-judgment interest, on the foregoing sums; and

13.     For an order awarding Plaintiff such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in this action.

Dated: April 26, 2022                    **DUANE MORRIS LLP**

By:/s/ Jennifer Lantz
Jennifer Lantz
Meghan C. Killian

Attorney for Plaintiff
DROPP TV HOLDINGS, INC.